## STATE v. VERNON JOHN LEE.

225 N. W. 2d 14.

January 3, 1975—No. 45085.

*Warren Spannaus,* Attorney General, *William B. Randall,* County Attorney, and *Darrell C. Hill,* Assistant County Attorney, for appellant.

*C. Paul Jones,* State Public Defender, for respondent.

YETKA, JUSTICE.

This is an appeal by the state pursuant to Minn. St. 632.11, subd. 1(1), from an order of the district court dismissing the

prosecution of defendant for felonious theft, Minn. St. 609.52, subds. 2(1) and 3(2), on the ground that the arrest was illegal and that therefore the court did not have jurisdiction over defendant's person. We reverse and remand for trial.

At 4:15 a.m. on March 22, 1974, Officer Joseph Guy of the Roseville Police Department stopped defendant after observing him driving in the vicinity of Snelling Avenue and County Road B at a speed estimated at 50 miles per hour in a 40-mile-per-hour zone. In response to a question concerning what he was doing, defendant stated that he was driving home after having been out all night drinking. Officer Guy, who did not smell any odor of alcohol, informed defendant that he had been speeding and asked to see his driver's license. During this conversation Officer Guy peered through the closed rear windows of the station wagon defendant had been driving and observed, in plain sight, two white profile Cheetah tires, G70-14, mounted on mag wheels. He observed additionally that these tires were not the correct size for the station wagon, had snow on tread sections, and finger marks on the mag portions of the wheels. When asked about the source of these tires and wheels, defendant stated that he had bought them in a junkyard someplace in Anoka for $15 but that he did not know the location of the junkyard or how long he had possessed them. Officer Guy then asked defendant to get into the squad car so that he could make a radio check to see if any tires matching that description had been reported stolen. He was advised in the negative by the dispatcher. While this was happening, another Roseville policeman who had arrived on the scene asked defendant about his participation the previous year in a theft of a motorcycle and motorcycle parts in Roseville. Defendant acknowledged his involvement in that incident. Based upon these facts and circumstances, Officer Guy decided to seize the tires and wheels but not to arrest defendant.

Several hours later, at 7:30 a.m., Roseville police received a report from Mr. Charles E. Ohr that overnight someone had stolen two mag wheels and Cheetah tires, G70 series, from his car which

had been parked one block from County Road B and Fry Street. Mr. Ohr later that day identified as his the tires and wheels seized from defendant. He valued the wheels and tires, which he estimated as having 8,000 miles on them, at $195.

Defendant was arrested on March 25, 1974, and a complaint was filed charging him with felonious theft. After the preliminary hearing, defendant made a special appearance in district court and moved for dismissal based upon lack of probable cause to arrest him. Both sides agreed to submit the matter to the court upon the transcript of the preliminary hearing, which transcript contained the facts as we have stated above. The court, after considering the matter, ordered the prosecution dismissed, reasoning that the police acted illegally and without probable cause in seizing the tires and wheels, that accordingly the police could not use this evidence to justify the arrest, and that therefore the arrest was without probable cause.

1. At the outset we consider the state's contention that the trial court erred in considering the matter of the legality of the seizure when it did rather than waiting for the Rasmussen hearing.

We believe that this contention lacks merit to the extent that it is based upon the notion that the state was denied an opportunity to litigate the matter. Surely, the prosecution must have known that the trial court might consider the legality of the preceding seizure in determining the legality of the subsequent arrest because the arrest was justified in part by the evidence seized. That being so, and in view of the fact that the state offered no argument and sought to introduce no evidence additional to the evidence introduced at the preliminary hearing, we fail to see how the state can contend that it was denied an opportunity to litigate the issue of the legality of the seizure.

However, this is not to say that the trial court necessarily had to decide the issue of the legality of the seizure. An arrest based upon illegally obtained evidence or information is not itself illegal if there is other sufficient evidence or information sup-

porting it which is not tainted by and is independent of the illegality. Here, even if police had not seized the items, they still could have had probable cause to arrest defendant once they received the theft report from Mr. Ohr. Therefore, the trial court could have avoided deciding the issue of the legality of the seizure by stating that even if (but without deciding whether) the seizure was illegal, the arrest was not, and that therefore the court had jurisdiction over defendant.

Employing this reasoning, we could reverse, simply saying that the arrest was not the fruit of the seized evidence and thereby avoiding decision of the issue of the legality of the seizure. However, in the interest of avoiding another pretrial appeal by the state following a possible determination at the Rasmussen hearing that the seizure was illegal, we shall also consider at this time the issue of whether there was probable cause for the seizure.

2. The factors forming the basis for the officers' probable-cause assessment in this case included the following, each of which we believe either pointed to or was consistent with the conclusion that the tires and wheels were stolen property and therefore subject to seizure:

(a) The officer stopped defendant and made his observations at 4:15 a.m. This factor had some relevancy in that police know that tires are more commonly taken from automobiles at night than during the day.

(b) When asked what he was doing, defendant responded that he had been out all night drinking yet the police smelled no odor of liquor. The fact that the officer smelled no odor of liquor suggested that defendant was lying about having been out all night drinking and also that defendant possibly was trying to divert the officer's attention from some other matter.

(c) There were two relatively new white profile Cheetah tires, G70-14, mounted on mag wheels in the cargo area of defendant's station wagon. The tires and wheels did not fit defend-

ant's station wagon. At the very least, this fact could arouse a prudent officer's suspicions.

(d) The tires were both mounted on wheels. We would assume that one who steals tires from cars usually takes the wheels also because it is simpler to do so.

(e) There was snow in the tire treads and finger marks on the wheels. This fits in with the theory that the wheels had recently been removed from some car.

(f) Defendant stated that he had purchased the two tires and wheels for only $15. This fact easily could have created strong suspicion in the officer's mind.

(g) Defendant did not know the name of the junkyard at which he had purchased the tires nor how long ago he had purchased them. This was a key fact suggesting to the officers that defendant lied when he said he had purchased the tires from a junkyard for $15 and giving strong support to any conclusion the officer had already formed that the tires were probably stolen.

(h) Defendant admitted that he had participated in the theft of a motorcycle and of motorcycle parts the previous year in Roseville. This fact alone would not justify the seizure but it was a relevant fact which the police could consider in making their probable-cause assessment. See, Beck v. Ohio, 379 U. S. 89, 85 S. Ct. 223, 13 L. ed. 2d 142 (1964); State v. Clifford, 273 Minn. 249, 141 N. W. 2d 124 (1966).

The police at the time of the seizure had not received any reports of the theft of two such tires. Had they received such a report, it would be clear that they had probable cause to seize. See, State v. Rak, 292 Minn. 434, 193 N. W. 2d 603 (1971). However, the fact that they had not received such a report is not necessarily a fact to be weighed against the others because if the theft was recent, as the snow on the tires suggested, then it would be unlikely that such a report would have been made by then.

As we stated in State v. Cox, 294 Minn. 252, 256, 200 N. W. 2d 305, 308 (1972):

"* * * [W]e must decide each case on its own facts, guided not by any magic formula but by the standard of reasonableness. In applying this standard we should not be overly technical and should accept the officer's probable-cause determination if reasonable and prudent men, not legal technicians, would under the same circumstances make the same determination."

If officers are ever to be permitted to preserve personal property they believe to be stolen, this is such a case. We believe that the officers in this case did have probable cause and that they did act reasonably.

There being probable cause to believe that the tires and wheels were stolen, the officers, even though they chose not to arrest defendant, had a right to seize the tires and wheels because they were easily disposable personal property. See, Cupp v. Murphy, 412 U. S. 291, 93 S. Ct. 2000, 36 L. ed. 2d 900 (1973).

Reversed and remanded for trial.