## STATE v. THOMAS CHESTER HOUFF.

243 N. W. 2d 129.

May 28, 1976—No. 45401.

C. Paul Jones, State Public Defender, and Rosalie E. Wahl, Special Assistant State Public Defender, for appellant.

Warren Spannaus, Attorney General, Peter W. Sipkins, Solicitor General, Kent G. Harbison, Special Assistant Attorney General, and Wallace C. Sieh, County Attorney, for respondent.

Heard before Sheran, C. J., and Rogosheske and Scott, JJ., and considered and decided by the court en banc.

SHERAN, CHIEF JUSTICE.

Defendant, after being certified for prosecution as an adult, was found guilty by a Mower County District Court jury of burglary, Minn. St. 609.58, subd. 2(3), and sentenced to not to exceed 3 years in prison. On appeal, defendant contends that his conviction should be set aside because (1) he was improperly certified for prosecution as an adult; (2) evidence admitted against him at trial was obtained in violation of his Fourth Amendment rights; and (3) his conviction is not supported by sufficient evidence. For the reasons which follow, defendant's conviction is affirmed.

Sometime on the night of May 30-31, 1973, the public school in Rose Creek, Minnesota, was burglarized. Various items, including padlocks, postage stamps in a plastic dispenser, and some change, mostly pennies, were taken. On the same night, a pop machine at a gas station in Brownsdale, Minnesota, was jimmied open. About 1 a. m. that night, Leon Plantz, then a resident of Brownsdale, observed two or three persons get out of a dark, older-model Dodge car and walk over to the gas station. Plantz had earlier observed that the car made a loud exhaust noise as though it had no muffler and that the car's right high-beam headlight was out. When Plantz heard banging noises coming from the direction of the gas station, he phoned law-enforcement authorities.

After Mr. Plantz's phone call, Mower County sheriff's deputies investigated the Brownsdale gas station. They found the station's pop machine jimmied open, and a description of the car was broadcast over the police radio. About 3 o'clock that same night, a car matching the description of the car seen in Brownsdale was stopped by a police officer in Austin, Minnesota. The car was driven by Dale Hoy; defendant, Thomas Houff, was a front-seat passenger and Paul Lowell was riding in the back seat.

The two sheriff's deputies who had investigated the Browns-dale gas station were called to the scene. One went up to the black Dodge and shone a three-cell flashlight through the windows. Because the fiberboard on the deck between the rear seat and the back window was missing, it was possible for the deputy to shine his flashlight into the trunk of the car. He did this and observed there some objects that were covered with dust and a crowbar that had no dust on it. The crowbar was taken from the car and the rest of the car was searched. The deputies discovered several items, including two padlock boxes, a roll of stamps in a plastic stamp dispenser, and $2.91 in change. The three occupants of the car were also required to empty their pockets, and each had 15 or 20 pennies. That night, only the crowbar and the $2.91 in change were seized. The Rose Creek school burglary was discovered on the morning of May 31. Subsequently defendant was arrested and this prosecution resulted.

■ Defendant's first argument is that he was improperly referred for adult prosecution because no hearing was held pursuant to Minn. St. 260.125. This argument overlooks the fact that defendant waived his right to a reference hearing.

When the state petitioned the juvenile court for an order referring defendant for adult prosecution, a reference hearing was scheduled for July 25, 1973. At the request of defendant's parents, the hearing was rescheduled for July 27. On July 27 defendant appeared with his mother, and the juvenile court appointed Philip Richardson as defendant's attorney. The reference hearing was postponed until defendant had had an opportunity

to confer with his court-appointed counsel. The two conferred that same day, and as a result of this conference attorney Richardson phoned the juvenile court judge to inform him that defendant had decided not to oppose referral for prosecution as an adult. A letter from Richardson to the judge, dated July 30, 1973, confirmed this phone conversation.[1]

Defendant's reliance on Juvenile Court Rule 1-5 for the proposition that a reference hearing may not be waived is misplaced. Rule 1-5(1) explicitly states that any right accorded a juvenile by the rules or by the Juvenile Court Act may be waived, except the child's right to counsel at a hearing to determine whether he should be referred for adult prosecution for an act which would be a felony if committed by an adult.[2] As was stated in People v. Sprinkle, 4 Ill. App. 3d 6, 15, 280 N. E. 2d 29, 36 (1972), "There is no authority to sustain the proposition that due process requires a [reference] hearing for all that is required is that the defendant be afforded the opportunity and right to such a hearing."[3] See, also, Haziel v. United States, 131 App. D. C. 298, 304, 404 F. 2d 1275, 1281 (1968), and In re Maricopa County Juvenile Action No. J-72804, 18 Ariz. App. 560, 564, 504 P. 2d 501, 505 (1972).

Furthermore, defendant's waiver of the reference hearing appears to have been knowingly and intelligently made by defendant and his parent when both were fully informed of his right to the hearing. Juvenile Court Rule 1-5 (2, 3); State v. Hogan, 297 Minn. 430, 440, 212 N. W. 2d 664, 670 (1973). The nature of the referral hearing and the defendant's rights were explained to both defendant and his mother by both the juvenile court judge

---

[1] "Confirming my telephone call to you on the afternoon of July 27, Thomas Houff was in my office and he has decided not to oppose referral of his case to the adult court."

[2] Also excepted, and therefore not subject to waiver, is the juvenile's right to nondisclosure of juvenile court records. Juvenile Court Rule 1-5(1).

[3] Opportunity and right to such a hearing are afforded in Minnesota pursuant to Minn. St. 260.125, subd. 2(c).

and the county attorney on July 27, 1973. Attorney Richardson presumably did likewise when he conferred with defendant on the same day. These facts take this case outside Haziel v. United States, *supra,* which condemned acceptance of such waivers by juvenile courts when the juvenile himself does not participate in the decision to waive. We therefore hold that defendant's waiver of his right to a reference hearing was valid and that the district court had jurisdiction to try defendant as an adult.

■ Defendant's second argument is that the trial court improperly admitted into evidence the crowbar seized on May 31, 1973, and facsimiles of the padlock box and stamp dispenser,[4] and that the court improperly permitted testimony about the pennies found on the persons of the car's occupants on the night in question. Defendant bases this argument on a contention that his Fourth Amendment rights were violated. We disagree.

As to the crowbar, the deputy who shone his flashlight into the car from outside the car's rear window clearly had a right to be in that place. State v. Crea, 305 Minn. 342, 233 N. W. 2d 736 (1975). The officer's flashlight search of the car from the outside is justified because he had probable cause to believe that the occupants of the car had been involved in the Brownsdale break-in and that either an instrumentality or the fruits of that crime would be present in the car.[5] The test is not whether it would have been reasonable for the police to obtain a search warrant, but whether they acted reasonably in proceeding without one. State v. Crea, *supra.* We believe that this warrantless flashlight search was reasonable because it was justified by probable cause and involved minimal intrusion. We therefore hold that the officer acted reasonably in looking through the car window with his flashlight.

---

[4] Only facsimiles of these two items could be introduced, for Hoy testified that he threw the padlocks into a lagoon near Houff's house, and that he sold the stamps to a truckdriver.

[5] The officer who conducted the flashlight search was also one of the officers who investigated the Brownsdale gas station incident.

6

Once the crowbar was observed, the totality of the circumstances created probable cause to justify its seizure. State v. Lee, 302 Minn. 382, 225 N. W. 2d 14 (1975). The crowbar was the only dust-free item in the trunk. It had traces of white paint chips on one end, and the pop machine at the Brownsdale station was white. Moreover, seizing the crowbar was the only way to preserve easily disposable personal property which the officers had reason to believe was an instrumentality of the crime.

Observation of the crowbar in the trunk, when combined with what the officers already knew about the Brownsdale gas station incident, created probable cause to believe that the car might contain fruits of the crime committed at Brownsdale. Therefore the search of the car subsequent to the discovery of the crowbar was justified. Chambers v. Maroney, 399 U. S. 42, 90 S. Ct. 1975, 26 L. ed. 2d 419 (1970). Neither the fact that no warrant had been obtained nor the fact that no arrests had been made prevented the search in these circumstances. State v. Bean, 280 Minn. 35, 42, 157 N. W. 2d 736, 741, certiorari denied, 393 U. S. 1003, 89 S. Ct. 493, 21 L. ed. 2d 468 (1968).

While it is more difficult to justify the personal search of the occupants of the car which occurred on the night in question, we conclude that the effect on the jury, if any, of testimony concerning the discovery of pennies in the pockets of defendant and his companions was de minimis. Only one reference to the fact that pennies were found in the youths' pockets appears in the entire transcript; similarly, there is only one reference to the fact that some change, "mostly pennies," was among the items missing from the Rose Creek school. If it was error to admit the testimony about the pennies in the pockets of the defendant and his companions, it was harmless. State v. Loss, 295 Minn. 271, 204 N. W. 2d 404 (1973).

■ Defendant's third argument is that his conviction is not supported by sufficient evidence. We do not agree.

We review the evidence in the light most favorable to the outcome below. State v. Ellingson, 283 Minn. 208, 211, 167 N. W.

2d 55, 57 (1969). The scope of our review is limited to ascertaining whether upon the evidence contained in the record the jury could reasonably find the accused guilty of the offense charged. State v. Norgaard, 272 Minn. 48, 52, 136 N. W. 2d 628, 631 (1965).

Defendant, Dale Hoy, and Paul Lowell all testified at the trial. Their story was that Hoy had taken defendant and Lowell to Spring Valley late in the afternoon of May 30 in the Dodge, and that defendant and Lowell had remained there until sometime after 1 o'clock that night, when Hoy returned to pick them up. Hoy and Lowell admitted stopping in Brownsdale around 2 a. m., but according to their testimony Hoy alone went to the gas station while defendant and Lowell just got out of the car to stretch their legs and walk around a bit. Defendant said he slept and did not know whether they stopped in Brownsdale or Rose Creek. Hoy admitted both break-ins, but claimed sole responsibility for both of them.

This testimony was undercut in several respects, however. On cross-examination, Hoy admitted that he had given false testimony on direct examination in an effort to "keep Brownsdale out" of their story, and he twice admitted that he had lied, once about having been alone when he returned to Spring Valley late on the night of May 30, and about having come straight back to Austin from Spring Valley once he got there. Cross-examination of Paul Lowell brought out a prior inconsistent statement he had given to the sheriff's department wherein he apparently stated that he alone had been the one left at Spring Valley and that both Hoy and defendant had picked him up later. It was established that only one sleeping bag and one small tent were with whoever stayed at Spring Valley.[6] Expert testimony established that the crowbar found in the black Dodge was the one used to break into the Rose Creek school. That crowbar belonged to defendant's

---

[6] There was a rumor of a party to be held in a field, and the camping gear was brought along because the previous parties had often lasted more than one day.

father. Furthermore, testimony that the three youths had not been in Brownsdale until about 2 o'clock was undercut by the fact that sheriff's department telephone records logged in the call from Mr. Plantz at 12:52 on the night in question. Finally, it was shown that Hoy and defendant were best friends and that Hoy had been in the Rose Creek school only once before.

The three youths did not deny that they had been in Rose Creek or Brownsdale. Rather, the question was who had been where and who had done what. We believe there was sufficient relevant evidence of probative value to justify the jury's verdict of guilty. State v. Crosby, 277 Minn. 22, 151 N. W. 2d 297 (1967). For the reasons stated in this opinion, defendant's conviction is affirmed.

Affirmed.