STATE of Minnesota, Appellant,

v.

Dean Jerome BERG, Respondent.

No. C6-85-1883.

Court of Appeals of Minnesota.

March 4, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Paul R. Jennings, Asst. Co. Atty., Minneapolis, for appellant.

William R. Kennedy, Hennepin County Public Defender, David M. Duffy, Asst. Public Defender, Minneapolis, for respondent.

Heard, considered and decided by LESLIE, P.J. and PARKER and CRIPPEN, J.

## OPINION

LESLIE, Judge.

The State appeals a pretrial order to suppress evidence because the police lacked probable cause to arrest respondent. We reverse.

## FACTS

On February 9, 1985, at approximately 4:20 a.m. the police received a call from eyewitnesses that a theft was in progress. The radio dispatcher informed police officers that two suspects had been seen stealing the tires from an automobile. One suspect was described as a white male, approximately 5 feet 7 inches, wearing a dark blue or black jacket and blue jeans. The other suspect was said to be a white male, about 15 years old.

Officer Johnson, who was about five or six blocks from the area of the reported theft, proceeded toward the area. The weather was cold and snowy, and the officer had noticed little vehicular traffic, and almost no pedestrians on the streets early that morning. When he was about a block from the reported theft, he saw a man walking down the sidewalk, in a direction consistent with the indicated flight of the suspects. Because almost no one was outside in the area at that cold, snowy, early morning hour, and because this man fit the description of one suspect, Officer Johnson stopped him and asked for identification and information as to where he was going. The man, Dean Berg, showed Johnson his driver's license and told him that he was returning from his girlfriend's house.

Officer Johnson patted Berg for weapons and then placed him in the rear of the squad car to ask some routine questions. When Johnson asked Berg if he could verify his location at the time of the theft, Berg gave the officer his girlfriend's name and phone number. Officer Johnson asked a dispatcher to call Berg's girlfriend and then Johnson proceeded with Berg towards the scene of the alleged theft. Upon arrival at the scene of the theft, the officer learned that Berg was lying because his girlfriend said that she had not seen him in two months.

When Officer Johnson arrived at the scene, he spoke with a police sergeant who was already there. When Johnson informed the sergeant of the information he had obtained, the sergeant advised him to make the arrest. Johnson then told Berg that he was under arrest, and read him his *Miranda* warning.

At this time the officer conducted a full search of Berg, finding a lug nut and some keys. Berg then changed his story, claiming that he had been working on the tires of his own car. When the officers checked Berg's car moments later, they found that this was not true because the lug nuts did not match those on Berg's car, nor were

any lug nuts missing from Berg's car. Further investigation of the scene of the theft showed unusual shoe prints in the snow. These prints matched Berg's tennis shoes. Berg was then taken to the Hennepin County jail for booking, where he made some incriminating statements.

Berg brought a motion to suppress much of this evidence, claiming that he was arrested without probable cause. Both the officer and the sergeant testified at the hearing. The trial court held that the original police stop was a valid investigatory stop, but that the arrest was invalid because the police lacked probable cause. The court reasoned that at the time of the arrest the officers only knew that Berg was in the general vicinity of the theft, that he fit the general description of the suspect, and that he lied about being with his girlfriend. The trial court suppressed evidence of the footprints, the keys defendant had with him at the scene, the lug nut, and defendant's statements at the scene and at the jail. The State appeals this ruling, claiming that there was probable cause for the arrest.

## ISSUE

Did the trial court err in suppressing evidence because the police lacked probable cause to arrest appellant?

## ANALYSIS

When the State appeals from pretrial orders in felony cases, appellate courts "will only reverse the determination of the trial court if the state demonstrates clearly and unequivocally that the trial court has erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial." *State v. Webber*, 262 N.W.2d 157, 159 (Minn. 1977). It is clear in the present case that unless reversed this ruling will have a critical impact on the outcome of the case. Without the suppressed evidence the State is left only with the evidence found before the arrest. Because the trial court ruled that this evidence did not amount to probable cause, the State's case is so weak without the suppressed evidence that any possibility of prosecuting the charge to a conviction has been effectively destroyed. *See id.* Therefore, unless reversed, this ruling will have a critical impact on the outcome of the case. *See State v. Kline*, 351 N.W.2d 388, 390 (Minn. Ct.App. 1984).

■ The test of probable cause to arrest is whether the objective facts are such that under the circumstances a person of ordinary care and prudence would entertain a strong and honest suspicion that the suspect committed a crime. *State v. Johnson*, 314 N.W.2d 229, 230 (Minn. 1982). Mere suspicion, however, is not equivalent to probable cause. *State v. Fish*, 280 Minn. 163, 169, 159 N.W.2d 786, 790 (1968).

We hold that the trial court clearly erred in ruling that the police did not have probable cause to make the arrest. First, the police spotted respondent at approximately 4:30 a.m. on a cold, snowy February night when few people were seen on the streets. Although this fact alone would not support a finding of probable cause, the fact that the events took place very late at night has been noted as supporting probable cause. *See State v. Lee*, 302 Minn. 382, 385, 225 N.W.2d 14, 16 (1975). Next, the police saw respondent, who matched eyewitness descriptions of the suspect, in the vicinity of the crime only moments after it was committed. This was held sufficient to establish probable cause in *State v. Willis*, 269 N.W.2d 355, 356 (Minn. 1978), in which the court held that "[w]here police officers observe an individual matching the description of a suspect in a burglary and rape within minutes after the offense and near the scene, probable cause exists to make an arrest." Finally, the police knew that respondent had lied to him when asked where he was that night. Although lying to an officer is not alone sufficient to establish probable cause, it has been noted as supporting probable cause. *See Lee*, 302 Minn. at 385, 225 N.W.2d at 16.

■ We believe the outcome of this case is controlled by *Willis*, 269 N.W.2d 355. In both cases, the defendant was seen in the

vicinity of the crime moments after the crime was committed and matched the eyewitness physical description of the suspect. Although the description in *Willis* was perhaps more detailed than the description of respondent, we believe the evidence against respondent in this case is stronger because he was seen at 4:30 a.m. on a cold, snowy February night when the streets were virtually deserted. *See Lee,* 302 Minn. at 385, 225 N.W.2d at 16. How detailed a description must be depends on many circumstances, including the number of persons in the area of the alleged offense. Although the description was probably not sufficient to choose among many people strolling on a nice evening, the police officers in the present case received the description at a time when the streets were virtually deserted. The fact that respondent was outside at that time, fit the description, and was seen close to the scene shortly after the crime was at least sufficient to require an investigatory stop. When the police learned that respondent had lied, probable cause was clearly established.

### DECISION

Because we hold that the State has shown clearly and unequivocally that the trial court has erred and that, unless reversed, the error will have a critical impact on the outcome of the trial, we reverse.

Reversed.

CRIPPEN, J., dissents.

CRIPPEN, Judge, dissenting.

I respectfully dissent. The trial court did not err in its analysis of the cause for a decision of two officers to arrest respondent. Moreover, out scope of review is limited such that we cannot reverse the trial court unless its error is "clearly and unequivocally" demonstrated. *State v. Webber,* 262 N.W.2d 157, 159 (Minn. 1977).

Summarizing substantive law on cause for arrests, the Minnesota Supreme Court has stated:

[P]robable cause for arrest exists where there is a reasonable ground for suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty.

*State v. Fish,* 280 Minn. 163, 169, 159 N.W.2d 786, 790 (1968). (In *Fish,* in addition to suspicions aroused by the time and place where the defendant was stopped, his car was seen leaving a burglarized business place, and an officer saw in his car an item known to have been on display in the burglarized building. On these facts, the supreme court affirmed a trial court decision that there was proper cause for arrest.)

At the time respondent was arrested here, five facts justified suspicions of police officers about his conduct:

1.  A theft had been reported.

2.  Respondent was observed shortly thereafter at a place one block from the reported theft.

3.  An officer observed respondent walking on the street at about 4:00 a.m. on a cold February night.

4.  Respondent fit a scant description of the alleged thief.

5.  Respondent lied to Officer Johnson about his whereabouts earlier that night.

It has not been strongly contended that Officer Johnson had cause for arrest before appellant's lie was discovered. Factors numbered 1 through 4 above constituted only articulable cause for an investigative stop. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

What is the significance of further suspicion prompted by discovery of respondent's lie? The trial court specifically addressed this question, concluding that the lie added "only a little" to the circumstances. The court concluded that probable cause required "some additional link tying the defendant to the attempted theft."

The trial court's analysis is not clearly wrong. Suspicion needed for probable cause must be supported by "circumstances sufficiently strong" to warrant "believing the accused to be guilty." *Fish,* 280

Minn. at 169, 159 N.W.2d at 790. More-over, the assessment of these circumstances must be viewed through the eyes of one who is "cautious." *Id.* The trial court's search for circumstances linking respondent to a crime was appropriate. Its conclusion that the link was missing cannot be regarded as clear error.