**Warren Lee STEINFELDT, et al., Appellants,**

v.

**AMCO INSURANCE COMPANY, Respondent.**

**No. CX–98–1952.**

Court of Appeals of Minnesota.

May 4, 1999.

Christopher A. Nelson, St. Louis Park, MN (for appellants)

Thomas H. Schaefer, Erstad & Riemer, P.A., Minneapolis, MN (for respondent)

Considered and decided by SCHUMACHER, Presiding Judge, LANSING, Judge, and WILLIS, Judge.

## OPINION

LANSING, Judge.

Warren Steinfeldt sustained injuries while attempting to provide assistance to victims of a motor vehicle accident on an adjacent roadway. The district court granted AMCO Insurance Company's motion for summary judgment and dismissed Steinfeldt's claim for coverage under his no-fault automobile insurance policy. We affirm.

## FACTS

Warren Steinfeldt, his wife, and their son were traveling in early November on a divided highway toward LaCrosse, Wisconsin. It was dark and the roads were icy. As they approached an overpass, Steinfeldt noticed approximately 12–14 cars colliding in the oncoming lanes of traffic.

Steinfeldt observed a car traveling the wrong direction in the opposite lane. A man got out of the car and began running toward the area of the accident. Steinfeldt asked the man if he needed help and the man said "yes." Steinfeldt got out of his car and ran up the road, intending to direct the oncoming traffic away from the accident. He heard a woman scream, changed direction, and headed toward the accident. Assuming it was about eight feet to the ground between the two lanes of traffic, Steinfeldt intended to leap over the cement barrier at the side of the road. But the underlying terrain that had been a recessed grassy median at the point Steinfeldt left his car had become a drop from an overpass approximately 50 to 60 feet from the ground. The force of the fall resulted in paralysis of his lower body, and he remains paraplegic.

879

Steinfeldt applied for benefits under his automobile insurance personal injury protection (PIP) endorsement. AMCO refused to pay any costs of Steinfeldt's treatment under the policy. The Steinfeldts (collectively Steinfeldt) filed suit against AMCO. AMCO moved for summary judgment, which the district court granted. Steinfeldt appeals, contending the injuries arose out of the maintenance or use of a motor vehicle, and he is therefore entitled to recover under Minnesota's no-fault law. Minn.Stat. 65B.44, subd. 3 (1996).

## ISSUE

Did Steinfeldt's injuries arise out of the maintenance or use of a motor vehicle as defined in Minn.Stat. 65B.43, subd. 3 (1996)?

## ANALYSIS

■ Our review of the district court's entry of summary judgment is limited to whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn. 1990); *see also* Minn. R. Civ. P. 56.03. On agreed facts, whether "an injury arises out of the use or maintenance of a motor vehicle is a question of law." *Kemmerer v. State Farm Ins. Cos.,* 513 N.W.2d 838, 842 (Minn.App. 1994) (citing *North River Ins. Co. v. Dairyland Ins. Co.,* 346 N.W.2d 109, 113 n. 2 (Minn.1984)), *review denied* (Minn. June 2, 1994). The determination turns on the particular facts presented in each case. *Continental W. Ins. Co. v. Klug,* 415 N.W.2d 876, 877–78 (Minn.1987).

Under the no-fault act, an insured may recover basic economic loss benefits for injuries "arising out of the maintenance or use of a motor vehicle." Minn.Stat. § 65B.44, subd. 1 (1996). The supreme court has formulated a three-factor test to determine whether an injury arose out of the maintenance or use of a motor vehicle. *Continental W. Ins.,* 415 N.W.2d at 878. First, the court considers the extent of the causation between the vehicle and the injury. *Id.* Second, if causation is present, the court considers whether an act of independent significance broke the causal chain. *Id.* Third, if no intervening act breaks

the causal chain, the court determines whether the vehicle was being used for transportation purposes at the time of the injury. *Id.*

■ The requisite connection between use and injury is "something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury." *North River Ins. Co.,* 346 N.W.2d at 114 (citation omitted). The causal connection is met if "the injury is a natural and reasonable incident or consequence of the use of the vehicle." *Haagenson v. National Farmers Union Property & Cas. Co.,* 277 N.W.2d 648, 652 (Minn.1979).

■ Steinfeldt argues that the causation requirement is satisfied, based on this court's decision in *Benike v. Dairyland Ins. Co.,* 520 N.W.2d 465 (Minn.App.1994), *review granted* (Minn. Oct. 14, 1994), *and appeal dismissed* (Minn. Apr. 5, 1995). But the injuries in *Benike* were caused by live power lines that had been pulled down as a result of the motor vehicle accident. *Id.* at 465. Although Benike and Steinfeldt share the similar circumstance of attempting to assist injured motorists, Benike's injury, unlike Steinfeldt's, was caused by contact with a physical instrumentality directly connected to the accident. *See also Progressive Cas. Ins. Co. v. Hoekman,* 359 N.W.2d 685 (Minn. App.1984) (injured party recovered under no-fault policy when automobile damaged garage door and garage door fell when injured party attempted to adjust it) *review denied* (Minn. Mar. 21, 1985).

AMCO argues that no causal connection exists between Steinfeldt's injuries and a motor vehicle because the injury was "not a natural and reasonable consequence of the use of [a] vehicle, nor was [a] vehicle an active accessory" to the injury. *Marklund v. Farm Bureau Mut. Ins. Co.,* 400 N.W.2d 337, 340 (Minn.1987). In *Marklund,* the insured was injured when he slipped and fell on some ice after he had refueled his vehicle and as he was on his way into a gas station to pay for the fuel. *Id.* at 338. The court noted that the ice did not come from the insured's car and determined that the injury resulted from a premises hazard, which was completely unrelated to the use or maintenance of the

vehicle. *Id.* at 338, 341. The court observed that "[p]remises hazards giving rise to slips, falls, and consequential injuries fall outside the parameters of hazards whose costs should be allocated to the activity of motoring." *Id.* at 341.

The circumstances in Steinfeldt's fall are comparable to those in *Marklund* in that the accident did not affect the condition of the guardrail or overpass. These conditions were part of the "lay of the land" and, as such, constitute premises hazards, causally unconnected to the motor vehicle accident. *See id.*

We recognize that Steinfeldt's tragic circumstances were directly caused by his humanitarian act of attempting to aid motorists whom he believed needed his assistance. We also recognize that allowing no-fault coverage to insureds who sustain injuries while attempting to assist victims of motor vehicle accidents would serve the beneficial goal of encouraging motorists to provide aid to those in need. The no-fault act, however, is a statutory creation; thus, policy decisions are properly for the legislature, not the courts. *See Meils by Meils v. Northwestern Bell Tel. Co.*, 355 N.W.2d 710, 713 (Minn.1984). Our interpretation of *Marklund* prevents us from extending the scope of the no-fault act to provide coverage in this case.

## DECISION

No causal relationship exists between Steinfeldt's injuries and the use of the motor vehicles involved in the accident. We therefore do not determine whether an act of independent significance occurred or whether the vehicles were being used for transportation purposes at the time of Steinfeldt's injury.

**Affirmed.**